1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT

9                   EASTERN DISTRICT OF CALIFORNIA

10                        ----oo0oo----

11   VICKI WEST and WENDY FAGUNDES,
     individually and on behalf of
12   others similarly situated,
                                        NO. CIV. S-04-0438 WBS GGH
13             Plaintiffs,

14        v.                            MEMORANDUM AND ORDER RE:
                                        PRELIMINARY MOTION TO APPROVE
15                                      CLASS ACTION SETTLEMENT
     CIRCLE K STORES, INC.,
16
               Defendant.
17

18                        ----oo0oo----

19             Plaintiffs Vicki West and Wendy Fagundes[1] seek to bring

20   a class action suit against defendant Circle K Stores, Inc. for

21   alleged violations of the California Labor Code, Cal. Lab. Code

22   §§ 226.7, 227.3, and California's Unfair Competition Law ("UCL"),

23   Cal. Bus. & Prof. Code §§ 17200-17210.  Presently before the

24   court is plaintiffs' motion for preliminary approval of

25   settlement with defendants.  For the following reasons,

26
     ─────────────────────
27        [1]   In their brief in support of their motion to certify
     the class, plaintiffs corrected the spelling of "Fagundes", which
28   had previously been spelled "Fegundes."

                                   1

1  plaintiffs' motion is granted.

2  I.    Factual and Procedural Background

3           On March 3, 2004, plaintiffs filed a class action
4  complaint claiming that defendant failed to pay (1) overtime
5  wages, (2) administrative leave wages, and (3) accrued but unused
6  vacation wages, all in violation of state law.  (Compl. ¶ 17.)
7  On July 15, 2005, this court granted in part plaintiffs' motion
8  to amend their complaint.  (July 15, 2005 Order at 2-3.)   The
9  amendments dropped some of the claims of one proposed subclass
10 (managers) and added Wendy Fagundes as a named plaintiff,
11 representing an additional class of employees claiming that
12 defendant failed to pay meal and break wages.  (Id. at 3-4.)

13          On March 20, 2004, plaintiffs moved to certify two
14 distinct classes based on their remaining claims: (1) a "meal
15 period class" defined as "all hourly store employees employed by
16 defendant in California since October 1, 2000, who did not
17 receive off-duty meal periods" and (2) a "vacation class" defined
18 as "all employees employed in California by defendant at any time
19 since March 3, 2000, who forfeited accrued but unused vacation
20 under defendant's vacation policy."   (Pl.'s Mot. for Class Cert.
21 1.)  However, before the court could hear that motion, the
22 parties attended a day long mediation with Justice Richard Neal
23 (retired) where they agreed to settlement terms.   Accordingly,
24 the parties now seek preliminary approval of their Joint
25 Stipulation of Settlement and Release.

26 ///

27 ///

28 ///

1  II.   Discussion

2       A.   Legal Standard

3            The Ninth Circuit has declared that a strong judicial

4  policy favors settlement of class actions.  Class Plaintiffs v.

5  City of Seattle, 955 F.2d 1268, 1276 (9th Cir. 1992).

6  Nevertheless, where, as here, "parties reach a settlement

7  agreement prior to class certification, courts must peruse the

8  proposed compromise to ratify both the propriety of the

9  certification and the fairness of the settlement."  Staton v.

10  Boeing Co., 327 F.3d 938, 952 (9th Cir. 2003).  In conducting the

11  first inquiry, the court "must pay 'undiluted, even heightened,

12  attention' to class certification requirements" because, unlike

13  in a fully litigated class action suit, the court will not have

14  future opportunities "to adjust the class, informed by the

15  proceedings as they unfold."  Amchem Prods. Inc. v. Windsor, 521

16  U.S. 591, 620 (1997); Hanlon v. Chrysler Corp., 150 F.3d 1011,

17  1019 (9th Cir. 1998) (quoting Amchem, 521 U.S. at 620).  "[T]he

18  parties can[not] agree to certify a class that clearly leaves any

19  one requirement unfulfilled" and consequently, the court cannot

20  blindly rely on the fact that the parties have stipulated that a

21  class exists for purposes of settlement.  Berry v. Baca, No. CV

22  01-02069, 2005 WL 1030248, at *7 (C.D. Cal. May 2, 2005); see

23  also Amchem, 521 U.S. at 622 (observing that nowhere does Rule 23

24  say that certification is proper simply because the settlement is

25  fair).  In the second part of its inquiry, the "'court must

26  carefully consider "whether a proposed settlement is

27  fundamentally fair, adequate, and reasonable,' recognizing that

28  '[i]t is the settlement taken as a whole, rather than the

3

1  individual component parts, that must be examined for overall

2  fairness . . . .'" <u>Staton</u>, 327 F.3d at 952 (quoting <u>Hanlon</u>, 150

3  F.3d at 1026); <u>see also</u> Fed. R. Civ. P. 23(e).

4          Additionally, approval of a class action settlement

5  takes place in two stages.  <u>See</u> <u>In re Phenylpropanolamine (PPA)</u>

6  <u>Prods. Liab. Litig.</u>, 227 F.R.D. 553, 556 (W.D. Wash. 2004)

7  (noting that in the first stage of the approval process "the

8  court preliminarily approve[s] the Settlement pending a fairness

9  hearing, temporarily certifie[s] the Class . . . , and

10  authorize[s] notice to be given to the Class").  Accordingly, in

11  this first order the court will only "determine[] whether a

12  proposed class action settlement deserves <u>preliminary</u> approval"

13  and lay the ground work for a future fairness hearing (see

14  schedule below).  <u>Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.</u>,

15  221 F.R.D. 523, 525 (C.D. Cal. 2004).  At that subsequent

16  hearing, after notice is given to class members, the court will

17  entertain any objections by putative class members to (1) the

18  treatment of this litigation as a class action and/or (2) the

19  terms of the settlement.  <u>Diaz v. Trust Territory of Pac.</u>

20  <u>Islands</u>, 876 F.2d 1401, 1408 (9th Cir. 1989) (holding that prior

21  to approving the dismissal or compromise of claims containing

22  class allegations, district courts must, pursuant to Rule 23(e),

23  hold a hearing to "inquire into the terms and circumstances of

24  any dismissal or compromise to ensure that it is not collusive or

25  prejudicial").[2]  Following that fairness hearing, the court will

26

27        [2]   Part of the reasoning in <u>Diaz</u> appears to have been
   overruled by the Supreme Court in <u>Amchem</u>.  Namely, <u>Diaz</u> assumed
28  that a court could approve settlement without certifying the

make a final determination as to whether the parties should be allowed to settle a class action pursuant to the terms agreed upon.  <u>DIRECTV, Inc.</u>, 221 F.R.D. at 525.

   B.   <u>Certification of the Class</u>

   A class action must meet four prerequisites identified in Federal Rule of Civil Procedure 23(a), in addition to meeting the requirements of at least one of the three subdivisions of Federal Rule of Civil Procedure 23(b).  <u>See</u> Fed. R. Civ. P. 23(a), (b).  Additionally, although a district court has discretion in determining whether the moving party has satisfied each Rule 23 requirement, <u>see</u> <u>Califano v. Yamasaki</u>, 442 U.S. 682, 701 (1979); <u>Montgomery v. Rumsfelo</u>, 572 F.2d 250, 255 (9th Cir. 1978), the court must conduct a rigorous inquiry before certifying a class, <u>see</u> <u>Gen. Tel. Co. v. Falcon</u>, 457 U.S. 147, 161 (1982); <u>E. Tex. Motor Freight Sys. v. Rodriquez</u>, 431 U.S. 395, 403-05 (1977).  As noted above, although the parties have stipulated that a class exists for purposes of settlement, this does not relieve the court of its duty to conduct this inquiry.

   Typically, when parties settle before the class is certified, the court is denied adversarial briefs on the class certification issue.  However, in this case the court is in a unique position, as the parties have already fully briefed a motion for class certification.  Although defendant now agrees, at least for the purposes of settlement, that class treatment is

_____

class.  <u>See</u> <u>Diaz</u>, 876 F.2d at 1408 ("Before certification, the dismissal is not res judicata against the absent class members and the court does not need to perform the kind of substantive oversight required when reviewing a settlement binding upon the class.").  As the discussion above illustrates, however, this reasoning is incompatible with the Court's holding in <u>Amchem</u>.

1   appropriate, it composed a lengthy brief in opposition to
2   plaintiffs' motion for certification.  The court will therefore
3   consider several of defendant's original arguments in deciding
4   whether the issues in this case should be treated as class claims
5   pursuant to Federal Rule of Civil Procedure 23(a) and 23(b)(3).

6       1. Rule 23(a)

7       Rule 23(a) restricts class actions to cases where:

8       (1) the class is so numerous that joinder of all
        members is impracticable, (2) there are questions
9       of law or fact common to the class, (3) the claims
        or defenses of the representative parties are
10      typical of the claims or defenses of the class, and
        (4) the representative parties will fairly and
11      adequately protect the interests of the class.

12  Fed. R. Civ. P. 23(a).  These requirements are more commonly
13  referred to as numerosity, commonality, typicality, and adequacy
14  of representation.  See Fed. R. Civ. P. 23(a); Hanlon, 150 F.3d
15  at 1019.

16      a. Numerosity

17      Courts have not established a precise threshold for
18  determining numerosity.  See Gen. Tel. Co. v. E.E.O.C., 446 U.S.
19  318, 330 (1980).  However, a class consisting of one thousand
20  members "clearly satisfies the numerosity requirement." Sullivan
21  v. Chase Inv. Servs., Inc., 79 F.R.D. 246, 257 (N.D. Cal. 1978).
22  To evidence the vacation class size, plaintiffs offer excerpts
23  from the depositions of Linda Prince and Robert Crandall, which
24  support their claim that 1,752 employees forfeited accrued but
25  unused vacation during the class period.  (Mar. 20, 2006 Jones
26  Decl. Ex. C (Prince Dep. 10:9-17); Ex. E (Crandall Dep. 55:13-
27  57:2).)  However, before defendant agreed to settle, it contended
28  that this figure is not accurate because it includes employees

6

who were not actually terminated, but rather were transferred to defendant's affiliated company (ConocoPhillips) following a sale of defendant's stock.  While this may be true, in order to eliminate this segment of the vacation class, the court would have to consider the merits of the parties' legal arguments, which it cannot do at the class certification stage.[3]  See Blackie v. Barrack, 524 F.2d 891, 901 n.17 (9th Cir. 1975) (acknowledging that in accepting allegations regarding class size, the resulting class order may be "speculative in the sense that the plaintiff may be altogether unable to prove his allegations").  Therefore, accepting plaintiffs' alleged class size as true, and recognizing that the joinder of 1,752 plaintiffs would be impracticable, the court holds that the numerosity requirement is satisfied as to the vacation class.

Likewise, numerosity is also satisfied for the meal period class--a fact that defendant has never disputed.  Since March 3, 2000, defendant has employed up to 14,000 hourly employees who might have claims for wrongfully withheld meal breaks.  (Rodriguez Decl. ¶ 1.)  Again, although courts have not established a precise number for the numerosity requirement,

---

[3]    In contesting the number of putative vacation class members, defendant originally argued that the law would not support plaintiff's claims.  Namely, defendant contended that, under California law, forfeiture cannot occur absent a termination of employment and that a change in ownership does not effectively amount to termination.  As noted above, these arguments speak directly to the merits of plaintiffs' claims. See Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 178 (1974) ("In determining the propriety of a class action, the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met." (quoting Miller v. Mackey Int'l, 452 F.2d 424, 427 (5th Cir. 1971))).

1  joinder of 14,000 people in a single case would clearly be

2  impracticable.

3              b. <u>Commonality</u>

4        Rule 23(a) also requires that "questions of law or fact

5  [be] common to the class."  Fed. R. Civ. P. 23(a)(2).  The Ninth

6  Circuit construes commonality liberally.  <u>See</u> <u>Hanlon</u>, 150 F.3d at

7  1019.  It is not necessary that <u>all</u> questions of law and fact be

8  common. "The existence of shared legal issues with divergent

9  factual predicates is sufficient, as is a common core of salient

10 facts coupled with disparate legal remedies within the class."

11 <u>Id.</u>

12 _____  Here, a significant common question exists as to

13 whether the defendant, by policy or practice, failed to carry

14 over accrued but unused vacation time from year to year on behalf

15 of the class members.  Had this case gone to trial, additional

16 common legal issues would have included: 1) whether termination

17 is necessary before the forfeiture of accrued but unused vacation

18 time is unlawful; 2) whether, under California Labor Code §

19 227.3, transfer of ownership constitutes a termination of the

20 employee relationship, requiring payment of all accrued but

21 unused vacation; and 3) whether the defendant's policy or

22 practice of manually carrying over accrued but unused vacation

23 time only upon request violates California Labor Code § 227.3 as

24 a "use it or lose it policy."  Such commonality among the class

25 members, in issues of both law and fact, is sufficient to meet

26 requisites of Rule 23(a)(2).

27        Commonality with respect to the meal period class

28 presents a closer question.  The purpose of this class is to

8

1   recover additional pay allegedly owed for missed meal breaks in

2   violation of California Labor Code § 226.7.  Cal. Lab. Code §

3   226.7(b) (requiring employers to pay employees "one additional

4   hour of pay at the employee's regular rate of compensation for

5   each work day that [a] meal or rest period[, as required by

6   subsection a,] is not provided").  However, the California Code

7   of Regulations further provides that "[a]n 'on duty' meal period

8   [is acceptable] when the nature of the work prevents an employee

9   from being relieved of all duty and when by written agreement

10  between the parties an on-the-job paid meal period is agreed to.

11  The written agreement [must] state that the employee may, in

12  writing, revoke the agreement at any time."  Cal. Code Regs. tit.

13  8, § 11070(11)(C).

14          At all times during the proposed the class period,

15  defendant required employees to sign some form of "meal period

16  agreement" (or waiver) that included the nature of the work

17  exception.  Nevertheless, defendant originally argued that

18  evaluating the enforceability of the waiver would require an

19  individual inquiry into the nature of each employee's work on

20  every shift where that employee missed a meal break.  Depending

21  on the traffic in a given store on a given shift, defendant

22  argued, the nature of the work may have precluded an off-duty

23  meal break, and these individual inquiries defeat commonality.

24          However, this argument would again involve the court in

25  a determination of the merits of the case.  The parties have not

26  provided the court with any authority establishing that the

27  nature of the work exception applies on a case-by-case, shift-by-

28  shift basis.  Indeed, such a rule would potentially eviscerate

the protections provided by California Labor Code § 226.7, as
every employer would defend against a claim of missed meal
periods by arguing that, because of the nature of the employee's
work on that day, he was too busy to take a break.  Instead, the
exception was more likely provided to allow employers some relief
when the nature of the work in their business overall does not
permit a mid-shift meal break.  Significantly, the court is also
not aware of any authority establishing that the nature of the
work in a convenience store qualifies for the § 11070(11)(c)
exception.  Consequently, because the court cannot resolve this
question without considering the merits of the case, the court
must recognize that a potential and significant common question
exists for the meal class.

c. Typicality

Rule 23(a) further requires that the "claims or
defenses of the representative parties [be] typical of the claims
or defenses of the class."  Fed. R. Civ. P. 23(a)(3).  Typicality
requires that named plaintiffs have claims "reasonably
coextensive with those of absent class members," but their claims
do not have to be "substantially identical."  Hanlon, 150 F.3d at
1020.  The test for typicality "is whether other members have the
same or similar injury, whether the action is based on conduct
which is not unique to the named plaintiffs, and whether other
class members have been injured by the same course of conduct."
Hanon v. Dataproducts Corp., 976 F.2d 497, 508 (9th Cir. 1992)
(quoting Schwartz v. Harp, 108 F.R.D. 279, 282 (C.D. Cal. 1985)).

In this case, all putative vacation class members
suffered the same injury when their accrued but unused vacation

10

1  time was forfeited without compensation.  The source of this

2  injury arises from a similar policy or practice instituted by the

3  defendant regarding the forfeiture of <u>accrued</u> but unused

4  vacation.[4]  Moreover, there is no indication of uniqueness as to

5  either defendant's conduct toward the named plaintiff or the

6  injury suffered as a result of that conduct (allegedly, lost

7  vacation time).  Therefore, the requirement of typicality has

8  been met.

9         The analysis is again somewhat more strained with

10 respect to the meal period class.  Defendant originally

11 challenged recognition of Fagundes as the class representative

12 because as a supervisor and a long term employee (nearly 11

13 years) in a business with nearly 100% turnover, her claims are

14 arguably not typical.  In particular, Fagundes, who signed an

15 outdated meal period agreement, has additional grounds on which

16 to challenge defendant's practices because her agreement lacks

17 the "revokable at will clause" that is presently required by Cal.

18 Code Regs. tit. 8, § 11070(11)(C).

19        Nevertheless, "[w]hen the same unlawful conduct was

20 directed at or affected both the named plaintiffs and the members

21

22      [4]    In opposing class certification prior to settlement,
   defendant originally argued that typicality is frustrated by the
23 existence of four vacation policies encompassed by the class
   definition.  (Def.'s Opp'n to Mot. for Class Cert. 35-36.)
24 Specifically, defendant pointed out that two distinct vacation
   policies apply to store managers and two distinct vacation
25 policies apply to store level employees. (Farthing Decl. ¶¶ 6-7.)
   However, a brief review of the policies suggests, at least as to
26 the forfeiture or carrying over of <u>accrued</u> vacation time, that
   any differences among the policies are insignificant. (<u>Compare</u>
27 Farthing Decl. Ex. A (Section V), <u>with</u> Farthing Decl. Ex. B
   (Section V) <u>and</u> Farthing Decl. Ex. C (Section V).)  Distinctions
28 regarding how vacation was accrued, and how much time an employee
   could store up, have no bearing on the typicality inquiry here.

1   of the putative class, the typicality requirement is usually met,

2   irrespective of varying fact patterns that underlie individual

3   claims." Stephenson v. Bell Atl. Corp., 177 F.R.D. 279, 285

4   (D.N.J. 1997) (citing Baby Neal v. Casey, 43 F.3d 48, 58 (3d Cir.

5   1994); Herbert Newberg & Alba Conte, Newberg on Class Actions §

6   3.13, at 3-76, 3-77 (3d ed. 1992)).   Here, like those that served

7   under her, Fagundes allegedly was improperly denied earned meal

8   breaks in violation of Cal. Lab. Code § 226.7.   Although she has

9   an additional ground on which to attack defendant's policy, the

10  court cannot say with certainty that this argument would succeed

11  and that plaintiff would thus not need to "prove what others in

12  the class must establish." Greeley v. KLM Royal Dutch Airlines,

13  85 F.R.D. 697, 701 (S.D.N.Y. 1980).   This is not a case where the

14  proposed class representative's legal arguments are completely

15  distinct from those of an identifiable subset of the class.

16  Rather, Fagundes' legal arguments are coextensive with those of

17  the class she proposes to represent.   Therefore plaintiffs can

18  satisfy the typicality requirement for the meal period class.

19                  d. Adequacy of Representation

20          Finally, rule 23(a) requires representative parties who

21  "will fairly and adequately protect the interests of the class."

22  Fed. R. Civ. P. 23(a)(4); see Hanlon, 150 F.3d at 1020.   To

23  resolve the question of legal adequacy, the court must answer two

24  questions: (1) do the named plaintiff and her counsel have any

25  conflicts of interest with other class members and (2) will the

26  named plaintiff and her counsel vigorously prosecute the action

27  on behalf of the class? Hanlon, 150 F.3d at 1020.

28          Defendant initially contended that the named

12

1  plaintiff's duty to ensure some of the putative class members

2  took their vacation days, while a supervisor in defendant's

3  employ, represents a conflict of interest with non-supervisor

4  class members.  However, in those circumstances where a conflict

5  of interest might exist, such a conflict will only bar

6  certification when "the conflict is serious and irreconcilable."

7  Mateo v. M/S Kiso, 805 F. Supp. 761, 772 (N.D. Cal 1992); see

8  also O'Connor v. Boeing N. Am., Inc., 184 F.R.D. 311, 335 (C.D.

9  Cal. 1998) ("[O]nly a conflict that goes to the very subject

10  matter of litigation will defeat a party's claim of

11  representative status." (quoting 10B Charles Alan Wright et al.,

12  Federal Practice and Procedure § 1768, at 327-28 (3d ed. 1998))).

13  Here, the possible conflict of interest must implicate the

14  forfeiture of vacation time, and it does not.  Instead, the named

15  plaintiff's alleged duty pertained to the accrual and use of

16  vacation time, a subject not in dispute.

17        Further, the fact that plaintiff's employment with

18  defendant ended in 2003 has no bearing on her adequacy as a class

19  representative.  To prove the elements associated with her

20  forfeiture of accrued vacation time claim, West must necessarily

21  engage in a course of litigation that will prove the elements of

22  injury as to the entire class, including those members who were

23  injured in 2004 and beyond.  Significantly, defendant has not

24  argued that it changed its policy or practice with respect to the

25  forfeiture and carrying over of vacation during the time

26  subsequent to the named plaintiff's termination.

27        Additionally, West has shown that her counsel is

28  adequately experienced in class actions.  (See Mar. 20, 2006

1  Jones Decl. ¶ 4.)  As such, the court can safely assume that her

2  counsel has vigorously sought to maximize the return on its labor

3  and to vindicate the injuries visited on the entire class.

4  Therefore, the court holds that West is an adequate class

5  representative.

6         Likewise, Fagundes does not have substantive conflicts

7  with the proposed meal period class and therefore is an adequate

8  representative for this group.  Although in theory, as a

9  supervisor in charge of scheduling meal breaks, Fagundes could be

10 partially responsible for failing to provide meal breaks, the

11 court is not aware of any source for such personal liability on

12 the part of the employee with respect to Cal. Lab. Code § 226.7.[5]

13 Cf. Cicairos v. Summit Logistics, Inc., 133 Cal. App. 4th 949,

14 962-63 (2005) (holding that an employer's "obligation to provide

15 the plaintiffs with an adequate meal period is not satisfied by

16 [shifting responsibility to employees to take their meal breaks],

17 because employers have 'an affirmative obligation to ensure that

18 workers are actually relieved of all duty.'" (quoting Wage Order

19 applicable to the transportation industry)).  Significantly,

20 plaintiff acted in accordance with defendant's well established

21 policies that left little room for discretion.  (See, e.g., Mar.

22 20, 2006 Jones Decl. Ex. B (Farthing Dep. 90:20-91:14 (describing

23 defendant's meal break policy and noting that employees could

24 take an off-duty meal break only after January, 2003 and only if

25 _____

26 [5] Moreover, to permit employers to hold supervisors
   responsible for not taking their own meal breaks simply because
   of the position they hold, as defendant originally argued, would
27 effectively deny supervisors the protections afforded by § 226.7.
   The court has not been advised of any authority suggesting that
28 the law should be applied in this way.

"there were two or more employees working <u>and</u> the nature of the business allowed" (emphasis added)).)  The claims of her fellow class members will not be that <u>she</u> denied them their meal breaks, but rather that their breaks were denied pursuant to <u>defendant's</u> policies.  These facts distinguish this case from the discrimination cases originally relied on by defendant, where supervisors were held to be inadequate representatives because they played a part in discriminatory practices that could be attributed to their employer.  <u>See</u> <u>Wagner v. Taylor</u>, 836 F.2d 578 (D.C. Cir. 1987); <u>Donaldson v. Microsoft Corp.</u>, 205 F.R.D. 558 (W.D. Wash. 2001).

Moreover, as noted by defendants, the Ninth Circuit has declined to adopt a per se rule prohibiting the representation of a subset of non-supervisory employees by supervisory employees. "[W]hether employees at different levels of the internal hierarchy have potentially conflicting interests is context-specific and depends upon the particular claims alleged in a case." <u>Staton</u>, 327 F.3d at 958.  As with typicality, the question boils down to whether the supervisor's claims are coextensive with those of the non-supervisory employees.  <u>Id.</u> Because the court has already made this determination in favor of plaintiffs, Fagundes can adequately represent the meal period class.

2. <u>Rule 23(b)</u>

An action that meets all the prerequisites of Rule 23(a) may be maintained as a class action only if it also meets the requirements of one of the three subdivisions of Rule 23(b). <u>See</u> <u>Eisen</u>, 417 U.S. at 163.  In this case, plaintiff seeks

15

1  certification of two independently represented classes under Rule
2  23(b)(3), "which is appropriate 'whenever the actual interests of
3  the parties can be served best by settling their differences in a
4  single action.'"  <u>Hanlon</u>, 150 F.3d at 1022 (quoting 7A Charles
5  Alan Wright, et al., <u>Federal Practice and Procedure</u> § 1777 (2d
6  ed. 1986)).  A class action may be maintained under Rule 23(b)(3)
7  if (1) "the court finds that the questions of law or fact common
8  to the members of the class predominate over any questions
9  affecting individuals members," and (2) "that a class action is
10 superior to other available methods for the fair and efficient
11 adjudication of the controversy."  Fed. R. Civ. P. 23(b)(3).

12                    a.  <u>Predominance</u>

13            Because the Rule 23(a)(3) already considers
14 commonality, the focus of the Rule 23(b)(3) predominance inquiry
15 is on the balance between individual and common issues.  <u>Hanlon</u>,
16 150 F.3d at 1022.  Here, defendant originally contended that
17 differences among the class members in vacation accrual caps,
18 vacation accrual rates, and the ability to take vacation days
19 raise individual issues that predominate any common legal or
20 factual issues.  (Def.'s Opp'n to Class Cert. 37-39.)  However,
21 differences in accrual caps and rates are quantitative measures
22 that are irrelevant to the appropriate overarching liability
23 question: whether the defendant's employment agreements amount
24 "to an impermissible 'use or lose it' policy or a valid 'no
25 additional accrual' policy" under California Labor Code § 227.3.
26 <u>Boothby v. Atlas Mech., Inc.</u>, 6 Cal. App. 4th 1595, 1603 (1992);
27 Cal. Labor Code § 227.3.  Because of the uniform language among
28 the several vacation policies, and the alleged uniform

                              16

1   implementation of these policies, common issues of law and fact

2   would predominate if this case were to go to trial.[6]  (See

3   Farthing Decl. Exs. A-C.)  Importantly, individual differences in

4   accrual caps, accrual rates, and amount of vacation time accrued

5   would have pertained to damages only and individual issues

6   regarding damages will not, by themselves, defeat certification

7   under Rule 23(b)(3).  See Blackie, 524 F.2d at 905-09 ("Courts

8   have generally declined to consider conflicts, particularly as

9   they regard to damages, sufficient to defeat class action status

10  at the outset unless the conflict is apparent, imminent, and on

11  an issue at the very heart of the suit.").

12          Likewise, assuming, as the court has, that the nature

13  of the work exception is intended to apply to the nature of the

14  work in general and not the circumstances on any given shift,

15  common claims would have predominated in the meal period class

16  action as well.  Individual matters, such as whether a putative

17  class member worked long enough to qualify for a meal break and

18  whether she was permitted to take the earned break, as in the

19  vacation class, would relate only to damages.  The predominant

20  issue, and one appropriate for class treatment, is whether

21  defendant's policies, which routinely resulted in employees

22  having to take on-duty meal "breaks," were lawful.

23  ///

24

25          [6]   In their reply to the defendant's opposition to
    certification, plaintiffs abandoned their assertion that
26  defendant's vacation policies were "unfair and unreasonable
    because workloads and chronic understaffing precluded employees
27  from taking vacation." (Pl.'s Reply to Def.'s Opp'n to Class
    Cert. 24.)  Therefore, to the extent that this argument raised
28  individual issues, that concern is no longer relevant.

17

1

                            b.   Superiority

2               In addition to the predominance requirement, Rule

3   23(b)(3) provides a non-exhaustive list of matters pertinent to

4   the court's determination that the class action device is

5   superior to other methods of adjudication.   See Fed. R. Civ. P.

6   23(b)(3)(A)-(D).   These matters include:

7           (A) the interest of members of the class in
            individually controlling the prosecution or defense of
8           separate actions;
            (B) the extent and nature of any litigation concerning
9           the controversy already commenced by or against members
            of the class;
10          (C) the desirability or undesirability of concentrating
            the litigation of the claims in the particular forum;
11          (D) the difficulties likely to be encountered in the
            management of a class action.
12

13  Id.  Some of these factors, namely (D) and perhaps (C), are

14  irrelevant if the parties have agreed to a pre-certification

15  settlement.   Amchem, 521 U.S. at 620.   Additionally, the court is

16  unaware of any concurrent litigation regarding the issues of the

17  instant case.   In the absence of competing lawsuits, it is also

18  unlikely that other individuals have an interest in controlling

19  the prosecution of this action or other actions, although

20  objectors at the fairness hearing may reveal otherwise.   As it

21  stands today however, the class action device appears to be the

22  superior method for adjudicating this controversy.   As such, the

23  vacation class is properly maintained under Rule 23(b)(3).

24              The superiority consideration also favors certification

25  of the meal period class, despite the availability of an informal

26  wage claim processing service provided by the Division of Labor

27  Standards Enforcement ("DLSE") (especially in light of the fact

28  that the parties have settled the case).   The administrative

                                18

1   hearing option (a "Berman hearing") described by defendant in its

2   opposition to class certification "is conducted 'in an informal

3   setting preserving the right[s] of the parties' and 'is designed

4   to provide a speedy, informal, and affordable method of resolving

5   wage claims.'"  Lolley v. Campbell, 28 Cal. 4th 367, 372 (2002)

6   (quoting Cal. Lab. Code § 98(a) and Cuadra v. Millan, 17 Cal. 4th

7   855, 858 (1998)).  Claimants need only submit a form to initiate

8   the process.  Cal. Lab. Code § 98(a).  However, the procedure is

9   not necessarily as quick and easy as defendants describe it.

10  Notably, successful claimants will need to participate in a

11  hearing or mediation where their employer will undoubtedly be

12  represented by counsel.  Id.  Additionally, the Commissioner has

13  discretion to delay a proceeding and there is an appeals process

14  that might further delay recovery.  Id.; Cal. Lab. Code § 98.2

15  (requiring that appeals be taken to a California Superior Court).

16          While these procedures might nevertheless be preferable

17  to a protracted class litigation, in light of the fact that the

18  parties here have proposed a settlement procedure that will allow

19  for virtually dispute-free claims to be processed in a matter of

20  months with minimal involvement on the part of the claimant or

21  the government, permitting the parties to proceed with class

22  certification and settlement seems to be the superior approach.

23  Additionally, the fact that claimants/class members might not be

24  able to recover the exact number of meal breaks missed and will

25  sacrifice some of their recovery to attorneys' fees must be

26  weighed against the fact that the settlement reaches back farther

27  than the DLSE proceedings would permit.  Given these

28  circumstances, a meal period class action presents a superior

method for pursuing the claims at issue here and certification is proper under Rule 23(b)(3).

   C.   <u>Fairness, Adequacy, and Reasonableness of Proposed</u>
        <u>Settlement</u>

        Having determined that class treatment appears to be warranted,[7] the court must now address whether the terms of the parties' settlement are fair, adequate, and reasonable.   In conducting this analysis, the court must balance several factors including:

> the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

<u>Hanlon</u>, 150 F.3d at 1026.   <u>But see</u> <u>Molski v. Gleich</u>, 318 F.3d 937, 953-54 (9th Cir. 2003) (noting that a district court need

---

   [7]   The court notes that it has conducted a full analysis of the class certification question at this stage to determine early on if all of the effort that will necessarily go into preparing for the fairness hearing is appropriate.   This initial determination that class certification is warranted is not, however, binding on the court and the parties are discouraged from changing their positions on the terms of the settlement in reliance on this order.   The court is not required to make a final determination that class treatment is appropriate until the final settlement approval, and it therefore does not herein make that final determination.   <u>See</u> <u>In re General Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.</u>, 55 F.3d 768, 797 (3d Cir. 1995) (holding that while the trustworthiness of the negotiation process used to approve the settlement can be relied on to justify provisional certification of a settlement class, "final settlement approval depends on the finding that the class met all the requisites of Rule 23").   Moreover, because the analysis of the superiority component of the Rule 23(b)(3) requirements depends in part on the terms of the settlement, the parties cannot assume that the court's class certification analysis would necessarily be the same if circumstances changed.

1  only consider <u>some</u> of these factors--namely those designed to

2  protect absentees).  Given that some of these factors cannot be

3  fully assessed until the court conducts its fairness hearing, "a

4  full fairness analysis is unnecessary at this stage . . . ."

5  <u>Reade-Alvarez v. Eltman, Eltman & Cooper, P.C.</u>, No. 04-2195, 2006

6  WL 1367414, at *7 (E.D.N.Y. May 18, 2006).  Accordingly, the

7  court will simply conduct a cursory review of the terms of the

8  parties' settlement for the purpose of resolving any glaring

9  deficiencies before ordering the parties to send the proposal to

10 class members.

11            1.  <u>Terms of the Settlement Agreement</u>

12            The key terms of the stipulation and settlement are as

13 follows:

14 1.   Class Definitions: the meal period class is defined as "All

15      hourly employees employed by Circle K Stores, Inc. in the

16      state of California from October 1, 2000 through the date

17      the Court grants preliminary approval of this Settlement."

18      The vacation class is defined as "All employees employed by

19      Circle K Stores, Inc. in the state of California from March

20      3, 2000 through the date the Court grants preliminary

21      approval of this Settlement who did not have all their

22      accrued but unused vacation carried forward from year to

23      year."  The agreement excludes from the class employees of

24      franchises who do/did not actually work for defendant Circle

25      K Stores, Inc.  (June 1, 2006 Jones Decl. Ex. A (Joint Stip.

26      of Settlement & Release ¶ 6).)

27 2.   Settlement Amount: Defendant agrees to a "total payout"

28      settlement of five million dollars ($5,000,000).  Of this

                                   21

1    amount, three million eight hundred thousand dollars

2    ($3,800,000) is allocated to the meal period class and one

3    million two hundred thousand dollars ($1,200,000) is

4    allocated to the vacation class.  (Id. ¶ 16.)

5  3.  Deductions: attorneys' fees (up to 30%), plaintiffs' costs

6    (up to $25,000), "service payments" to the class

7    representatives (up to $15,000 each), and claims

8    administration costs (up to $150,000) will be deducted from

9    defendant's total liability of $5,000,000.  With the

10    exception of the service payments, the meal period class

11    will bear 76% of these costs and fees; the vacation class

12    will bear the remainder.  (Id. ¶ 15(d).)

13  4.  Award Allocations: Meal period class members who file timely

14    claims will receive a proportionate share of the $3,800,000

15    class settlement amount, minus costs, fees, and service

16    payments.  A member's share will be based on the number of

17    weeks she worked for defendant during the class period and

18    this number will be determined based on the total number of

19    days worked divided by seven.  (Id. ¶ 15(d)(i)(a).)  The

20    parties estimate that this approach will at a minimum yield

21    an $8 per week payment for each class member, resulting in

22    payments in excess of $2,600 for employees that worked

23    throughout the entire class period.  (P. & A. in Supp. of

24    Mot. for Prelim. Approv. 8.)  Vacation class members who

25    file timely claims will likewise receive a proportionate

26    share of the $1,200,000 class settlement amount, minus

27    costs, fees, and service payments.  After all claims are

28    filed, the vacation class award will be divided by the

1    number of claimed vacation hours, yielding a per hour

2    payment.  (June 1, 2006 Jones Decl. Ex. A (Joint Stip. of

3    Settlement & Release ¶ 15(d)(i)(b)).)   The parties

4    anticipate that this will result in at least a $13 per hour

5    payment for employees who, on average, were making $7 per

6    hour. (P. & A. in Supp. of Mot. for Prelim. Approv. 8-9.)

7  5.  Claims Procedures: Members of each class will receive two

8    forms sent out by the Claims Administrator, Rosenthal &

9    Company LLC.  (June 1, 2006 Jones Decl. Ex. A (Joint Stip.

10   of Settlement & Release ¶¶ 15(d)(ix), 22(h)).)   One will be

11   a preprinted Class Claims Form that, based on defendant's

12   records, will establish either the number of weeks worked

13   (for meal period class members) or the number of vacation

14   days owed (for vacation class members).  (Id. ¶

15   15(d)(ix)(a)-(b).)   Class members will also receive a

16   Request for Exclusion Form that will advise them on how to

17   opt out of the class action settlement.  (Id.)   These forms

18   will be sent, along with a notice announcement detailing the

19   history of this litigation and further explaining the terms

20   of the settlement, no more than twenty (20) days from the

21   date of this order.  (Id. ¶ 18(c).)   Class members will have

22   sixty (60) days from the date that notice is mailed to

23   submit a claim and forty-five (45) days to request exclusion

24   (in other words, to opt out).  (June 1, 2006 Jones Decl. Ex.

25   D (Proposed Notice).)   Payments to class claimants will be

26   mailed by the claims administrator within twenty (20) days

27   of the final approval of the settlement.  (June 1, 2006

28   Jones Decl. Ex. A (Joint Stip. of Settlement & Release ¶

23

1  20).)

2  6.  Release: Class members who do not opt out of the class

3      action, even if they do not file a claim, are forever barred

4      from bringing claims for failure to provide meal or rest

5      breaks from October 1, 2000 until this settlement is finally

6      approved, and from bringing claims for failure to annually

7      carry over accrued but unused vacation from March 3, 2000

8      until this settlement is finally approved.  (June 1, 2006

9      Jones Decl. Ex. D (Proposed Notice).)  The release does not

10     cover employees who did not actually work for defendant, but

11     rather worked for a franchisee.  Additionally, the release

12     does not apply to claims arising after December 2003

13     against ConocoPhillips (which sold defendant Circle K

14     Stores, Inc. through a stock sale in December 2003 and

15     absorbed some of defendant's existing employees through

16     "migration").  (Id.; Apr. 7, 2006 Jones Decl. Ex. F (Prince

17     Dep. 74:8-75:3).)

18           2.  Preliminary Determination of Adequacy

19           Again, at this preliminary approval stage, the court

20  need only "determine whether the proposed settlement is within

21  the range of possible approval."  Gautreaux v. Pierce, 690 F.2d

22  616, 621 n.3 (7th Cir. 1982) (quotation marks omitted).  The

23  court is really only concerned with "whether the proposed

24  settlement discloses grounds to doubt its fairness or other

25  obvious deficiencies such as unduly preferential treatment of

26  class representatives or segments of the class, or excessive

27  compensation of attorneys . . . ."  Tenuto v. Transworld Sys,,

28  Inc., No. CIV. 99-4228, 2001 WL 1347235, at *1 (E.D. Pa. Oct. 31,

24

1   2001).

2        Accordingly, it is sufficient to note that the

3   stipulation and settlement appear to be, for the most part, the

4   result of vigorous, arms-length bargaining.  Counsel for both

5   parties have been actively engaged in this litigation for over

6   two years and have diligently pursued the necessary discovery.

7   Significantly though, despite having a factually well-developed

8   case, both sides still face significant uncertainty because the

9   claims (in particular the meal period class claim) encompass

10  unsettled legal issues.  These circumstances and attendant risks

11  favor settlement.  Hanlon, 150 F.3d at 1026.

12       Additionally, the terms of the settlement provide for

13  significant recovery for class members[8] while at the same time

14  offering a manageable approach to calculating awards.  The

15  proposed attorneys' fees, at no more than 30%, are also

16  potentially within reason.[9]  Likewise, the detailed notice

17  proposed by the parties clearly explains to class members what

18  their options are and is more than adequate.  See Fed. R. Civ. P.

19  23(c)(2) (requiring only "the best notice practicable under the

20  circumstances" "[f]or any class certified under Rule 23(b)(3)");

21

22       [8]   In particular, the settlement creates an opportunity
    for class members to file claims that might otherwise be time-
23  barred.

24       [9]   The stipulation recognizes that counsel must still
    submit an application for attorneys' fees, which it will do prior
25  to the fairness hearing, and that the ultimate award will be
    determined by the court based on that application.  Depending on
26  the form of plaintiffs' counsel's application, the amount could
    be less than 30%.  See Staton, 327 F.3d at 968 (discussing awards
27  of attorneys' fees in the context of a pre-certification class
    action settlement and noting that "[t]his circuit has established
28  25% of the common fund as a benchmark award for attorney fees."
    (quoting Hanlon, 150 F.3d at 1029)).

Churchill Vill., L.L.C. v. Gen. Elec., 361 F.3d 566, 575 (9th
Cir. 2004) ("Notice is satisfactory if it 'generally describes
the terms of the settlement in sufficient detail to alert those
with adverse viewpoints to investigate and to come forward and be
heard.'" (quoting Mendoza v. Tucson Sch. Dist. No. 1, 623 F.2d
1338, 1352 (9th Cir. 1980))).

        The only aspect of the settlement and notice that gives
this court pause is the proposed "service payment" for the class
representatives.  In addition to the right to file claim forms,
the settlement proposes a $15,000 "enhancement award" for each
named plaintiff.  The court recognizes that "a class
representative is entitled to some compensation for the expense
he or she incurred on behalf of the class lest individuals find
insufficient inducement to lend their names and services to the
class action."  In re Oracle Secs. Litig., No. C-90-0931, 1994 WL
502054, at *1 (N.D. Cal. June 18, 1994) (citing In re Continental
Ill. Secs. Litig., 962 F.2d 566, 571 (7th Cir. 1992)).  "Such
payments, however, must be reasonable in light of applicable
circumstances, and not 'unfair' to other class members." Smith
v. Tower Loan of Miss., Inc., 216 F.R.D. 338, 368 (S.D. Miss.
2003); see also In re Oracle Secs. Litig., 1994 WL 502054 at *1
(reducing requested payment of $2,500 to $500 for spending
"between two and five hours undergoing depositions and . . .
respond[ing] to a few narrow document discovery requests").

        The proposed payment is not particularly unfair to
other class members, given that it will not significantly reduce
the amount of settlement funds available to the rest of the
class.  However, the court has no way of knowing whether the

26

payments are reasonable in light of applicable circumstances because plaintiffs have provided only general and largely conclusory statements about their involvement.  They have failed to account for the number of hours spent on this case and have not described any personal sacrifices they made on behalf of the class.  Cf. Nilsen v. York County, 382 F. Supp. 2d 206, 215 (D. Me. 2005) (awarding incentive payments of up to $6,500 to class representatives who "sacrificed their privacy to vindicate the privacy rights of the class members" by revealing in court documents and to the media that they had been subjected to illegal strip searches).  Significantly, although Fagundes, who remains in defendant's employ, may have risked retaliation by her employer, the same cannot be said for West, who left Circle K in 2003.

Moreover, prior to settlement, both named plaintiffs declared that they "seek nothing for [themselves] in addition to the relief [they] seek on behalf of the class as a whole."  (Mar. 20, 2006 Jones Decl. Ex. N (Fagundes Decl. ¶ 9), Ex. P (West Decl. ¶ 7).)  This change in the relief sought by plaintiffs, and the fact that it is roughly six times the amount they would likely receive as ordinary class members pursuant to the terms of their own settlement, raises the specter that the named plaintiffs have been "bought out" to circumvent a more costly class action litigation.  At the fairness hearing, based on detailed evidence of plaintiffs' involvement in this case, the court will determine what portion of this amount is actually

1  justified.[10]

2          In all other respects, the court preliminarily finds

3  that the stipulation and terms of parties' settlement are

4  acceptable.

5          IT IS THEREFORE ORDERED that plaintiffs' motion for

6  preliminary approval of settlement be, and the same hereby is,

7  GRANTED.

8          IT IS FURTHER ORDERED that

9          (1) the following classes be provisionally certified

10 for the purpose of settlement in accordance with the terms of the

11 stipulation: (a) All hourly employees employed by Circle K

12 Stores, Inc. in the state of California from October 1, 2000

13 through the date the Court grants preliminary approval of this

14 Settlement; and (b) All employees employed by Circle K Stores,

15 Inc. in the state of California from March 3, 2000 through the

16 date the Court grants preliminary approval of this Settlement who

17 did not have all their accrued but unused vacation carried

18 forward from year to year.

19          (2) if the stipulation does not receive the court's

20 final approval, should final approval be reversed on appeal, or

21 should the stipulation otherwise fail to become effective for any

22 reason (including any party's exercise of a right to terminate

23 _____

24     [10]     The Ninth Circuit has warned district courts that "[i]t
   is the settlement taken as a whole, rather than the individual
25 component parts, that must be examined for overall fairness," and
   consequently "[t]he settlement must stand or fall in its
26 entirety."   Hanlon, 150 F.3d at 1026.  However, because the terms
   of the stipulation and settlement contemplate a service payment
27 of "not more than", or "up to", $15,000 per plaintiff "[s]ubject
   to [c]ourt approval", any modification of this award will be well
28 within the terms of the agreement.  (June 1, 2006 Jones Decl. Ex.
   A (Joint Stip. of Settlement & Release ¶¶ 15(d), (d)(xi)).)

under the stipulation), the court's grant of certification of the class shall be vacated and become null and void without further action or order of the court.

(3) the stipulation and the settlement provided therein are preliminarily approved as fair, reasonable, and adequate within the meaning of Federal Rule of Civil Procedure 23, subject to final consideration at the fairness hearing provided for below.

(4) for purposes of the stipulation and carrying out the terms of the settlement only:

a. Vicki West is appointed as the representative of the vacation class.

b. Wendy Fagundes is appointed as the representative of the meal period class.

c. the law firm of McInerney & Jones is appointed as lead counsel for the classes and shall be responsible for the acts and activities necessary or appropriate to present this stipulation and the proposed settlement to the court for approval and, if the settlement is finally approved, to implement the settlement in accordance with the terms of the stipulation and orders of the court.

(5) Rosenthal & Company LLC, 300 Bel Marin Keys Boulevard, Novato, California, is hereby approved and appointed as the Claims Administrator to carry out the duties of the Claims Administrator set forth in the stipulation.

(6) the form and content of the Notice of Settlement of Class Action (June 1, 2006 Jones Decl. Ex. D) is approved with the exception of section six, addressing scheduling matters

related to the Final Settlement Approval Hearing.  These
provisions are modified as provided below in order line eleven.

(7) the form and content of the Class Claim Form (June
1, 2006 Jones Decl. Ex. E) is approved.

(8) the form and content of the Request for Exclusion
Form (June 1, 2006 Jones Decl. Ex. F) is approved.

(9) no later than thirty (30)[11] days from the date of
this order, the Claims Administrator shall cause a copy of the
Notice, the Claim Form, and the Exclusion Form to be mailed by
first class mail to all class members who can be identified
through reasonable effort from defendant's records.  Defendant is
hereby ordered and directed to provide the Claims Administrator
with class member information pursuant to the terms of the
stipulation.

(10) a hearing (the "Final Fairness Hearing") shall be
held before this court on October 16, 2006 at 1:30 p.m. in
Courtroom 5 to determine whether the proposed settlement, on the
terms and conditions set forth in the stipulation, is fair,
reasonable, and adequate and should be approved by the court; to
determine whether a judgment as provided in the stipulation
should be entered finally approving the settlement; and to
consider class counsel's applications for attorneys' fees,
reimbursement of costs, and service payments.  The court may
continue the Final Fairness Hearing without further notice to the

[11]    The terms of the parties' stipulation and settlement
provide for twenty (20) days.  However, at oral argument the
parties requested that the court provide the Claims Administrator
with thirty (30) days to prepare and send out the appropriate
forms.

1  members of the class.

2          (11) any person who has standing to object to the terms

3  of the proposed settlement may appear at the Final Fairness

4  Hearing in person or by counsel, if an appearance is filed as

5  hereinafter provided, and be heard to the extent allowed by the

6  court in support of, or in opposition to, (1) the fairness,

7  reasonableness, and adequacy of the proposed settlement; (2) the

8  requested award of attorneys' fees, reimbursement of costs, and

9  service payments to class representatives; and/or (3) the

10 propriety of class certification.  To be heard in opposition, a

11 person must, within forty-five (45) calendar days after notice is

12 mailed, (a) serve by hand or through the mails written notice of

13 his, her, or its intention to appear, stating the name and case

14 number of this litigation and each objection and the basis

15 therefor, together with copies of any papers and briefs, upon

16 class counsel and upon counsel for defendant, and (b) file said

17 appearance, objections, papers and briefs with the court,

18 together with proof of service of all such documents upon counsel

19 for the parties.  Responses to any such objections and class

20 counsel's application for attorneys' fees, reimbursement of

21 costs, and class representative service payments shall be served

22 by hand or through the mails on the objectors (or on the

23 objector's counsel if any there be) and filed with the Clerk of

24 this Court no later than fourteen (14) calendar days before the

25 Final Fairness Hearing.  Objectors may file optional replies no

26 later than one week before the Final Fairness Hearing in the same

27 manner described above.  Any settlement class member who does not

28 make his, her, or its objection in the manner provided herein

31

1   shall be deemed to have waived such objection and shall forever

2   be foreclosed from objecting to the fairness or adequacy of the

3   proposed settlement as memorialized in the stipulation, the

4   judgment entered, and the award of attorneys' fees, expenses, and

5   service payments unless otherwise ordered by the court.

6          (12) pending final determination of whether the

7   settlement should be finally approved, the court preliminarily

8   enjoins all class members (unless and until the class member has

9   submitted a timely and valid Request for Exclusion Form) from

10  filing or prosecuting any claims, suits or administrative

11  proceedings (including but not limited to claims with the

12  California DLSE) regarding claims to be released by the

13  settlement.

14  DATED:  June 12, 2006

15

16  _____

17  WILLIAM B. SHUBB
    UNITED STATES DISTRICT JUDGE

18

19

20

21

22

23

24

25

26

27

28