UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

VICKI WEST and WENDY FAGUNDES,
individually and on behalf of
others similarly situated,

        NO. CIV. S-04-0438 WBS GGH

        Plaintiffs,

    v.

        MEMORANDUM AND ORDER RE:
        MOTION FOR FINAL APPROVAL OF
        CLASS ACTION SETTLEMENT, AWARD
        OF ATTORNEYS' FEES AND COSTS,
        AND ADDITIONAL COMPENSATION TO
        NAMED PLAINTIFFS

CIRCLE K STORES, INC.,

        Defendant.

----oo0oo----

      Plaintiffs Vicki West and Wendy Fagundes[1] sought to
bring a class action suit against defendant Circle K Stores, Inc.
for alleged violations of the California Labor Code sections
226.7, 227.3, and California's Unfair Competition Law ("UCL"),
Cal. Bus. & Prof. Code §§ 17200-17210.  On June 13, 2006, this

---

    [1]   In their brief in support of their motion to certify
the class, plaintiffs corrected the spelling of "Fagundes," which
had previously been spelled "Fegundes."

1

1  court entered an order preliminarily approving the settlement

2  reached by the parties.  Presently before the court are

3  plaintiffs' applications for final approval of the class action

4  settlement, attorneys' fees and costs, and additional

5  compensation for named plaintiffs.  For the following reasons,

6  the court will grant final approval of the settlement, attorneys'

7  fees and costs, and additional compensation.

8  I.   Factual and Procedural Background

9         On March 3, 2004, plaintiffs filed a class action

10  complaint claiming that defendant failed to pay (1) overtime

11  wages, (2) administrative leave wages, and (3) accrued but unused

12  vacation wages, all in violation of state law.  (Compl. ¶ 17.)

13  On July 15, 2005, this court granted in part plaintiffs' motion

14  to amend their complaint.  (July 15, 2005 Order at 2-3.)  The

15  amendments dropped some of the claims of one proposed subclass

16  (managers) and added Wendy Fagundes as a named plaintiff,

17  representing an additional class of employees claiming that

18  defendant failed to pay meal and break wages.  (Id. at 3-4.)

19         On March 20, 2006, plaintiffs moved to certify two

20  distinct classes based on their remaining claims: (1) a "meal

21  period class" defined as "all hourly store employees employed by

22  defendant in California since October 1, 2000, who did not

23  receive off-duty meal periods" and (2) a "vacation class" defined

24  as "all employees employed in California by defendant at any time

25  since March 3, 2000, who forfeited accrued but unused vacation

26  under defendant's vacation policy."  (Pl.'s Mot. for Class Cert.

27  1.)  However, before the court could hear that motion, the

28  parties attended a day long mediation with Justice Richard Neal

2

1 (retired) where they agreed to settlement terms.

2       The court preliminarily approved this settlement in an
3 order issued on June 13, 2006, and provisionally certified the
4 two classes for the purpose of settlement.  The court
5 additionally appointed Vicki West as the representative of the
6 vacation class, Wendy Fagundes as the representative of the meal
7 period class, the law firm of McInerney & Jones as lead counsel,
8 and Rosenthal & Company, LLC as the claims administrator.  The
9 court also approved the class claim form, the exclusion form, and
10 the notice of settlement with minor modifications as to
11 scheduling, and directed the claims administrator to send copies
12 of these three documents to all identifiable class members within
13 thirty days of the order's issuance.  The court is unaware of any
14 relevant factual or legal developments that would alter its
15 previous analysis, and plaintiffs' counsel represented at oral
16 argument that he did not encounter any such change.  Finally, the
17 court set the Final Fairness Hearing on October 16, 2006, at 1:30
18 p.m.  After conducting the fairness hearing and carefully
19 considering the settlement terms, the court now addresses whether
20 the proposed settlement is fair, reasonable, and adequate, such
21 that it should be approved by the court; whether a judgment as
22 provided in the stipulation should be entered for final approval
23 of the settlement; and whether class counsel's applications for
24 attorneys' fees and costs, as well as additional compensation for
25 named plaintiffs, should be granted.

26 ///

27 ///

28 ///

II.  Discussion

    A.  Legal Standard

        The Ninth Circuit has declared that a strong judicial policy favors settlement of class actions.  Class Plaintiffs v. City of Seattle, 955 F.2d 1268, 1276 (9th Cir. 1992).  "There is an overriding public interest in settling and quieting litigation" that is "particularly true in class action suits." Van Bronkhorst v. Safeco Corp., 529 F.2d 943, 950 (9th Cir. 1976).  Nevertheless, where "parties reach a settlement agreement prior to class certification, courts must peruse the proposed compromise to ratify both the propriety of the certification and the fairness of the settlement."  Staton v. Boeing Co., 327 F.3d 938, 952 (9th Cir. 2003).  Having conducted the first inquiry regarding the propriety of certification, the "'court must carefully consider "whether a proposed settlement is fundamentally fair, adequate, and reasonable,' recognizing that '[i]t is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness . . . .'"  Id. at 952 (quoting Hanlon v. Chrysler Corp., 150 F.3d 1011, 1026 (9th Cir. 1998)); see also Fed. R. Civ. P. 23(e).

        At the fairness hearing, the court should entertain any objections by putative class members to: (1) the treatment of this litigation as a class action and/or (2) the terms of the settlement.  Diaz v. Trust Territory of Pac. Islands, 876 F.2d 1401, 1408 (9th Cir. 1989) (holding that prior to approving the dismissal or compromise of claims containing class allegations, district courts must, pursuant to Rule 23(e), hold a hearing to

4

"inquire into the terms and circumstances of any dismissal or compromise to ensure that it is not collusive or prejudicial"). Following the fairness hearing, the court will make a final determination as to whether the parties should be allowed to settle the class action pursuant to the terms agreed upon.  <u>Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.</u>, 221 F.R.D. 523, 525 (C.D. Cal. 2004).

In determining whether the terms of the parties' settlement are fair, adequate, and reasonable, the court must balance several factors, including:

> the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

<u>Hanlon</u>, 150 F.3d at 1026.  <u>But see Molski v. Gleich</u>, 318 F.3d 937, 953-54 (9th Cir. 2003) (noting that a district court need only consider <u>some</u> of these factors--namely those designed to protect absentees).

A.   <u>Terms of the Settlement Agreement</u>

The key terms of the stipulation and settlement are as follows:

1.   Class Definitions: the meal period class is defined as "All hourly employees employed by Circle K Stores, Inc. in the state of California from October 1, 2000 through the date the Court grants preliminary approval of this Settlement." The vacation class is defined as "All employees employed by Circle K Stores, Inc. in the state of California from March

1    3, 2000 through the date the Court grants preliminary

2    approval of this Settlement who did not have all their

3    accrued but unused vacation carried forward from year to

4    year."  The agreement excludes from the class employees of

5    franchises who do/did not actually work for defendant Circle

6    K Stores, Inc.  (June 1, 2006 Jones Decl. Ex. A (Joint Stip.

7    of Settlement & Release ("Settlement") ¶ 6).)

8  2.  Settlement Amount: Defendant agrees to a "total payout"

9    settlement of five million dollars ($5,000,000).  Of this

10   amount, three million eight hundred thousand dollars

11   ($3,800,000) is allocated to the meal period class and one

12   million two hundred thousand dollars ($1,200,000) is

13   allocated to the vacation class.  (Id. ¶ 16.)

14  3.  Deductions: attorneys' fees (up to 30%), plaintiffs' costs

15   (up to $25,000), "service payments" to the class

16   representatives (up to $15,000 each), and claims

17   administration costs (up to $150,000) will be deducted from

18   defendant's total liability of $5,000,000.  With the

19   exception of the service payments, the meal period class

20   will bear 76% of these costs and fees; the vacation class

21   will bear the remainder.  (Id. ¶ 15(d).)

22  4.  Award Allocations: Meal period class members who file timely

23   claims will receive a proportionate share of the $3,800,000

24   class settlement amount, minus costs, fees, and service

25   payments.  A member's share will be based on the number of

26   weeks she worked for defendant during the class period and

27   this number will be determined based on the total number of

28   days worked divided by seven.  (Id. ¶ 15(d)(i)(a).)  The

6

1    parties estimate that this approach will at a minimum yield

2    an $8 per week payment for each class member, resulting in

3    payments in excess of $2,600 for employees that worked

4    throughout the entire class period.  (P. & A. in Supp. of

5    Mot. for Prelim. Approv. 8.)  Vacation class members who

6    file timely claims will likewise receive a proportionate

7    share of the $1,200,000 class settlement amount, minus

8    costs, fees, and service payments.  After all claims are

9    filed, the vacation class award will be divided by the

10   number of claimed vacation hours, yielding a per hour

11   payment.  (June 1, 2006 Jones Decl. Ex. A Settlement ¶

12   15(d)(i)(b)).)  The parties anticipate that this will result

13   in at least a $13 per hour payment for employees who, on

14   average, were making $7 per hour. (P. & A. in Supp. of Mot.

15   for Prelim. Approval 8-9.)

16   5.   Claims Procedures: Members of each class will receive two

17        forms sent out by the Claims Administrator, Rosenthal &

18        Company LLC.  (June 1, 2006 Jones Decl. Ex. A Settlement ¶¶

19        15(d)(ix), 22(h)).)  One will be a preprinted Class Claims

20        Form that, based on defendant's records, will establish

21        either the number of weeks worked (for meal period class

22        members) or the number of vacation days owed (for vacation

23        class members).  (Id. ¶ 15(d)(ix)(a)-(b).)  Class members

24        will also receive a Request for Exclusion Form that will

25        advise them on how to opt out of the class action

26        settlement.  (Id.)  These forms will be sent, along with a

27        notice announcement detailing the history of this litigation

28        and further explaining the terms of the settlement, no more

7

1    than twenty (20) days from the date of this order.  (Id. ¶

2    18(c).)  Class members will have sixty (60) days from the

3    date that notice is mailed to submit a claim and forty-five

4    (45) days to opt out.  (June 1, 2006 Jones Decl. Ex. D

5    (Proposed Notice).)  Payments to class claimants will be

6    mailed by the claims administrator within twenty (20) days

7    of the final approval of the settlement.  (Id. Ex. A

8    (Settlement ¶ 20).)

9  6.  Release: Class members who do not opt out of the class

10    action, even if they do not file a claim, are forever barred

11    from bringing claims for failure to provide meal or rest

12    breaks from October 1, 2000, until this settlement is

13    finally approved, and from bringing claims for failure to

14    annually carry over accrued but unused vacation from March

15    3, 2000, until this settlement is finally approved.  Id. Ex.

16    D (Proposed Notice).)  The release does not cover employees

17    who did not actually work for defendant, but rather worked

18    for a franchisee.  Additionally, the release does not apply

19    to claims arising after December 2003 against ConocoPhillips

20    (which sold defendant Circle K Stores, Inc. through a stock

21    sale in December 2003 and absorbed some of defendant's

22    existing employees through "migration").  (Id.; Apr. 7, 2006

23    Jones Decl. Ex. F (Prince Dep. 74:8-75:3).)

24    B.   Factor Analysis

25         1.   Strength of the Plaintiff's Case

26         Counsel for both parties have been actively engaged in

27  this litigation for over two years and have diligently pursued

28  the necessary discovery.  Certain aspects of plaintiffs' case

8

1  were quite strong.  From deposition testimony, it was clear that

2  defendant had not carried forward accrued but unused vacation

3  from year to year for a large number of employees.  (Application

4  for Final Approval of Settlement 6.)  Moreover, defendant

5  acknowledged that it had a blanket policy of preventing employees

6  from taking meal periods because of the "nature of the work" in

7  the convenience store industry.  (Id.)  Defendant has since

8  changed its policy and now allows off-duty meal periods when more

9  than one employee works on a given shift.  (Id.)

10              2.   Risk, Expense, Complexity, and Likely Duration of

11                   Further Litigation

12  _____Despite having significantly developed the facts in the

13  case, both sides faced significant uncertainty because the claims

14  (in particular the meal period class claim) encompass unsettled

15  legal issues.  The complexity and duration of further litigation

16  was likely to be considerable.  There were over 10,000 potential

17  class members in this case.  Completing discovery (in particular,

18  depositions) in a case with such a large class would have been

19  extremely costly.  Additionally, plaintiffs were proceeding

20  against a large and sophisticated defendant, who vigorously

21  defended its position until settlement was reached.  (See Apr. 3,

22  2006 Def.'s Opp'n to Mot. for Class Cert.; Def.'s Objections to

23  Request for Judicial Notice; May 31, 2006 Stip. & Proposed Order

24  for Prelim. Approval of Settlement.)  The hotly-contested nature

25  of this case prior to settlement further indicates that

26  plaintiffs' counsel assumed some degree of risk by proceeding

27  with this litigation.  These circumstances and attendant risks

28  favor settlement.  Hanlon, 150 F.3d at 1026.

3.   Risk of Maintaining Class Action Status Throughout
the Trial

Further, it was not clear that the classes would remain intact if trial proceeded.  The California Supreme Court is currently resolving a split amongst California Courts of Appeal that would affect the outcome of the case--namely, whether the remedy provided by Labor Code § 226.7 should be considered a wage or a penalty.  See Murphy v. Kenneth Cole Prods., Inc., 134 Cal. App. 4th 728, 751 (2005), review granted and opinion superceded by Murphy v. Kenneth Cole Prods., Inc., 40 Cal. Rptr. 3d 750 (2006).  If the California Supreme Court determines that the remedy under this labor code section is appropriately considered a penalty, a one-year statute of limitations would apply to the meal break class, which would cut the length of the class period in half.  It is additionally unclear whether the remedy provided by California Business & Professions Code § 17203 provides a remedy that is a wage or a penalty.  Cortez v. Purolator Air Filtration Prods. Co., 23 Cal.4th 163, 173 (2000).  The resolution of this question would also affect what statute of limitations is applied to the claims in this case.  (See Feb. 14, 2006 Order re: Motion for Summ. J. 4-7.)  Further, the court has previously noted that defendant raised persuasive arguments regarding the commonality and typicality of the meal period class.  (June 13, 2006 Order 7-12.)  Thus, the settlement ensures that a more inclusive meal period class will obtain relief than may otherwise be the case, which counsels for settlement.

4.   Amount Offered in Settlement

The total amount agreed to in the settlement is a

10

1  "total payout" of $5,000,000, regardless of how many claims are

2  ultimately received.  Subtracting the attorneys' fees, litigation

3  costs, enhancement awards, and administrative costs, the net

4  result is that the meal period class would be compensated with

5  $2,712,884.30 and the vacation class would be compensated with

6  $846,437.20.  (Charles A. Jones Decl. ¶ 6.)  The meal period

7  class members with timely and valid claims contend that they

8  worked approximately 197,468.64 weeks[2] without meal periods,

9  which means that each claimant in this class stands to receive

10 between $12.93 and $13.73 for omitted meal breaks per week of

11 work.  (Id. ¶ 8.)  This means, in turn, that the average member

12 of this class would receive between $3,845.64 and $4,083.58.

13 (Id.)  The members of the vacation class will receive between

14 $15.00 and $17.74, depending on how the claim administrator

15 resolves disputes regarding work weeks, for every hour of

16 vacation forfeited.  (Id. ¶ 9.)  The net recovery for plaintiffs

17 is greater than originally anticipated, and is therefore greater

18 than the amount plaintiffs were informed they would receive in

19 the notice.  (Jones Decl. Ex. B (Class Notice); Application for

20 Final Approval of Settlement 9; Application for Attorneys' Fees &

21 Costs 14.)  Thus, because plaintiffs are ensured compensation for

22 the injury they suffered, and the rate of compensation appears to

23 be fair and reasonable, this factor weighs in favor of approving

24 the settlement.

25              5.   Extent of Discovery Completed and the Stage of the

26

27        [2]    This number is somewhat in dispute, and may yet
   increase by approximately 12,296.09 weeks.  (Jones Decl. Ex. G
28 (John Keane Decl. ¶ 17).)

<u>Proceedings</u>

The complaint in this case was filed in March, 2004, and has been actively litigated since that time.  During discovery, plaintiffs served on defendant thirty-nine interrogatories, seventy-four requests for production of documents, and fifteen requests for admissions.  (Pls.' Application for Final Approval of Settlement 4.)  Defendant produced more than 2,000 pages of documents in response to these discovery requests.  (<u>Id.</u>)  Defendant served on plaintiffs eighty requests for production of documents and twenty-seven interrogatories.  (<u>Id.</u>)  Finally, eight depositions have been conducted to date--plaintiffs deposed several of defendant's employees and defendant's designated expert, while defendant deposed both of the proposed class representatives.  (<u>Id.</u>)  Thus, substantial discovery had been conducted at the time the parties agreed to settle the case; additionally, the court had ruled on a motion for partial summary judgment and was considering a motion to certify the class.  The advanced stage of the proceedings suggests that the parties had carefully investigated the claims before reaching resolution.  Thus, this factor weighs in favor of approving the settlement.

6.   <u>Experience and Views of Counsel</u>

The law firm of McInerney & Jones, counsel for plaintiffs in this action, has previously represented plaintiffs in more than thirty class actions over the past sixteen years, all of which involved labor and employment law.  (June 1, 2006 Jones Decl. ¶ 4.) )  Many of these class actions have involved interpretation of California's labor code.  (<u>Id.</u>)  In fact,

12

1   McInerney & Jones represent class action plaintiffs exclusively.

2   (Application for Final Approval of Settlement 2.)  McInerney &

3   Jones has also settled more than fifteen class actions related to

4   wage and hour disputes.  (June 1, 2006 Jones Decl. ¶ 4.)

5   Additionally, counsel in this case have tried more than ten class

6   actions involving overtime pay through certification, and have

7   lost certification in a few instances.  (Pls.' Application for

8   Final Approval of Settlement 3.)  Thus, counsel are familiar with

9   the attendant risks of representing plaintiffs in class action

10  suits.  (Id.)

11       Moreover, plaintiffs' counsel have indicated that they

12  are pleased with the result obtained in this settlement, and that

13  they believe it is fair and reasonable.  With regard to class

14  action settlements, the opinions of counsel should be given

15  considerable weight both because of counsel's familiarity with

16  this litigation and previous experience with cases such as these.

17  In re Wash. Public Power Supply System Sec. Litig., 720 F. Supp.

18  1379, 1392 (D. Ariz. 1989) (citing Officers for Justice v. Civil

19  Service Com'n of City and County of S.F., 688 F.2d 615, 625 (9th

20  Cir. 1982).  The court has observed that the litigation has been

21  appropriately characterized by aggressive and capable advocacy on

22  both sides.  As in the case of In re Washington, "[t]here is

23  likewise every reason to conclude that settlement negotiations

24  were vigorously conducted at arms' length and without any

25  suggestion of undue influence."  Id. at 1392.  Thus, this factor

26  supports approval of the settlement agreement.

27  ///

28  ///

13

1          7.   <u>Presence of a Governmental Participant</u>

2          This factor is irrelevant to the court's analysis, as

3   no governmental entity participated in this class action.

4          8.   <u>Reaction of the Class Members to the Proposed</u>

5               <u>Settlement</u>

6          Notice of the proposed settlement was mailed to each of

7   the potential members of the settlement classes, along with a

8   claim form and a request for exclusion form.  (Oct. 2, 2006 Jones

9   Decl. Ex. B, E, & F.)  The notice complied with Federal Rule of

10  Civil Procedure 23(e).  It informed potential class members what

11  the minimum amount of money was that they could expect to receive

12  under the settlement, how settlement awards would be calculated,

13  how to dispute defendant's data regarding work week hours, the

14  procedure for objecting more generally or excluding oneself

15  altogether from the settlement, the amount of fees and costs that

16  would be paid out of the settlement, and the date of the final

17  approval hearing.  (<u>Id.</u> Ex. B.)

18         The deadline for objecting to the settlement was August

19  21, 2006, and class members did not file any objections to the

20  terms of the settlement, the amount of fees and costs sought, or

21  the service payments to the named plaintiffs.  (Oct. 2, 2006

22  Jones Decl. ¶ 3; Keane Decl. ¶ 15.)  Moreover, the settlement

23  underestimated the amount of relief plaintiffs would obtain and

24  overestimated the amount of attorneys' fees that counsel

25  ultimately sought.  (Application for Final Approval of Settlement

26  9-10.)  In particular, the notice informed plaintiffs of the

27  upper bound of attorneys' fees, and plaintiffs' counsel are now

28  requesting $250,000 less in attorneys' fees.  (Jones Decl. Ex. B

14

1  (Class Notice).)  The lack of objections to the settlement is

2  perhaps the most significant factor weighing in favor of

3  settlement.[3]

4        C.  <u>Award of Attorneys' Fees</u>

5            Federal Rule of Civil Procedure 23(h) provides that

6  "[i]n an action certified as a class action, the court may award

7  reasonable attorneys' fees and nontaxable costs authorized by law

8  or by agreement of the parties . . . ."  "In assessing attorneys'

9  fees, courts typically apply either the percentage-of-recovery

10 method or the lodestar method.  The percentage-of-recovery method

11 is generally favored in common fund cases because it allows

12 courts to award fees from the fund in a manner that rewards

13 counsel for success and penalizes it for failure."  <u>In re Rite</u>

14 <u>Aid Corp. Sec. Litig.</u>, 396 F.3d 294, 300 (3rd Cir. 2005)

15 (quotations and citation omitted).

16            The Ninth Circuit has noted that, in class actions,

17 "fee awards range from 20 percent to 30 percent of the fund

18 created."  <u>Paul, Johnson, Alston & Hunt v. Graulty</u>, 886 F.2d 268,

19 272 (9th Cir. 1989).  The court additionally noted with approval

20 "that one court has concluded that the 'bench mark' percentage

21 for the fee award should be 25 percent."  <u>Id.</u>  That percentage

22

23        [3]  Although not one of the factors the court must
   consider, an additional consideration favoring settlement is
24 that, after this lawsuit was filed, defendant changed some of its
   employment practices regarding the issues involved in this
25 litigation.  Notably, defendant has created a new policy allowing
   off-duty meal periods when multiple employees are working on a
26 particular shift.  (Pls.' Application for Final Approval of
   Settlement 6.)  Defendant has also corrected its practices by
27 allowing employees to carry forward their accrued but unused
   vacation from year to year.  (Oct. 19, 2006 Charles A. Jones
28 Decl. ¶ 8.)

15

1    may be adjusted in either direction "to account for any <u>unusual</u>

2    circumstances involved in this case." <u>Id.</u> (emphasis added).

3    "Courts may observe the following factors when determining

4    whether the benchmark percentage should be adjusted: (1) the

5    result obtained for the class; (2) the effort expended by

6    counsel; (3) counsel's experience; (4) counsel's skill; (5) the

7    complexity of the issues; (6) the risks of non-payment assumed by

8    counsel; (7) the reaction of the class; and (8) comparison with

9    counsel's loadstar." <u>In re Heritage Bond Litig.</u>, No. 02-1475,

10   2005 WL 1594403, at *18 (C.D. Cal. 2005) (citations omitted).

11          The proposed settlement appropriately takes a

12   percentage-of-recovery approach to calculate fees.  Although the

13   settlement allows for thirty percent of the settlement fund to be

14   awarded as attorneys' fees, plaintiffs' counsel requests twenty-

15   five percent of the fund.  There are no unusual circumstances

16   here that would justify a downward departure from this benchmark

17   amount.

18          On the contrary, an application of the factors noted

19   above demonstrates that the award is eminently reasonable.  These

20   factors overlap with the factors the court has already considered

21   in evaluating the settlement itself, and the court has previously

22   noted that factors one, three, five, six, and seven counsel in

23   favor of approval of the settlement.  With regard to the second

24   factor, the effort expended by counsel in this case was

25   considerable.  Plaintiffs filed a motion to amend the complaint,

26   which was opposed by defendants, and defendants filed a motion

27   for summary judgment against the meal period claims, the

28   resolution of which turned upon complex and divergent appellate

                                  16

opinions regarding state law.  (See Feb. 14, 2006 Order re:
Motion for Summ. J. 6-7.)  Plaintiffs prevailed on both of these
motions.  Moreover, as to factor four, counsel's skill has been
adequately demonstrated by their success in this litigation.
Thus, these two factors suggest that the amount of attorneys'
fees requested is appropriate.

The final factor is whether the amount counsel requests
is consistent with what the lodestar amount would be.
Plaintiffs' counsel has submitted a declaration indicating that
he estimates he has spent 1,674 hours on this case over the
course of two and a half years, and that he anticipates he will
spend at least sixty more hours "resolving claim disputes,
talking with class members and the claims administrator about pay
outs, finalizing the claims administration process and the
allocation of taxes, and providing a final accounting to the
court."  (Oct. 19, 2005 Jones Decl. ¶ 5.)  Given that counsel
seeks $1,225,000 in attorneys' fees, this means that the
settlement compensates counsel at an hourly rate of approximately
$706.  There are three attorneys at the firm that has represented
plaintiffs in this action.  To date, Mr. Jones' rate has been
approximately $450 an hour, and the same billing rate applies for
another attorney at his firm, Kelly McInerney.  (Id.)  The
billing rate for the lead attorney at the firm, Kevin J.
McInerney, is in excess of $700 an hour.  (Id.)  Mr. Jones worked
approximately seventy percent of the hours expended on this case,
Ms. McInerney worked approximately twenty percent of those hours,
and Mr. McInerney is responsible for the remainder of the work
(ten percent of the total hours).  Thus, the lodestar calculation

17

1  indicates that counsel is being compensated at rate elevated from

2  his normal rate of pay, but not to an egregiously high level.

3  Additionally, to the extent the hours expended are attributable

4  to Mr. McInerney, the lodestar calculation is consistent with Mr.

5  McInerney's standard billing rate.

6      Significantly, counsel simply seeks the benchmark

7  percentage rate set by the Ninth Circuit.  Although the

8  percentage calculation is not a perfect approximation of what a

9  lodestar calculation would be, excess compensation to this degree

10  is not an "unusual circumstance" that would justify a downward

11  departure from the benchmark.  Paul, Johnson, Alston, & Hunt, 886

12  F.2d at 272.  Additionally, not all of the factors must be met to

13  justify a fee award, and the rest of the factors clearly weigh in

14  favor of granting a fee award of this amount.  In sum, the factor

15  analysis weighs in favor of granting plaintiffs' counsel twenty-

16  five percent of the common fund for their attorneys' fees, and

17  the court will therefore allow the award in the amount requested.

18      D.   Costs

19      "There is no doubt that an attorney who has created a

20  common fund for the benefit of the class is entitled to

21  reimbursement of reasonable litigation expenses from that fund."

22  In re Heritage Bond Litig., 2005 WL 1594403, at *23 (quoting In

23  re Gen. Instruments Sec. Litig., 209 F. Supp. 2d 423, 434 (E.D.

24  Pa. 2001) (omitting citations and alterations)).  Class counsel

25  has submitted its itemized costs relating to travel, mailing

26  expenses, mediation, depositions/transcriptions, legal research,

27  photocopies, filings, court call, and facsimiles.  (Oct. 2, 2006

28  Jones Decl. Ex. D.)  The court finds that these are reasonable

18

1   litigation expenses that warrant compensation.

2            Additionally, the claims administrator, Rosenthal &
3   Company, LLC, applies for costs incurred in administering the
4   settlement in the amount of $145,536.25.  Rosenthal & Company has
5   incurred $96,836.25 in costs to date, and anticipates that it
6   will yet incur an additional $48,700 in administrative costs
7   pertaining to the settlement.  (Jones Decl. Ex. G (Keane Decl. ¶
8   18.)  These additional costs will involve processing claims that
9   are late, deficient, or disputed, sending denial letters, issuing
10  checks, completing tax returns, and issuing tax documents.  (Id.)
11  Because this relief could not be dispersed to the class without
12  the efforts of the class administrator, and the amount requested
13  appears reasonable given the size of the class, the court will
14  award reimbursement for expenses incurred to the claims
15  administrator.

16       E.   Enhancement Award for Class Representatives

17            The settlement proposes a $15,000 "enhancement award"
18  for each named plaintiff.  The court recognizes that "a class
19  representative is entitled to some compensation for the expense
20  he or she incurred on behalf of the class lest individuals find
21  insufficient inducement to lend their names and services to the
22  class action."  In re Oracle Secs. Litig., No. C-90-0931, 1994 WL
23  502054, at *1 (N.D. Cal. June 18, 1994) (citing In re Continental
24  Ill. Secs. Litig., 962 F.2d 566, 571 (7th Cir. 1992)).  "Such
25  payments, however, must be reasonable in light of applicable
26  circumstances, and not 'unfair' to other class members."  Smith
27  v. Tower Loan of Miss., Inc., 216 F.R.D. 338, 368 (S.D. Miss.
28  2003) (citation omitted); see also In re Oracle Secs. Litig.,

1994 WL 502054 at *1 (reducing requested payment of $2,500 to
$500 for spending "between two and five hours undergoing
depositions and . . . respond[ing] to a few narrow document
discovery requests").

The proposed payment is not particularly unfair to
other class members, given that it will not significantly reduce
the amount of settlement funds available to the rest of the
class.  None of the class members have objected to the amount of
additional compensation sought by the named plaintiffs.  Notably,
Fagundes, who remains in the employ of defendant's franchisee,
may have risked retaliation by her employer.  The same, however,
cannot be said for West, who left Circle K in 2003.

West and Fagundes have subordinated their individual
claims to serve as named plaintiffs in this class action.
Plaintiffs' counsel explains that Fagundes could have brought a
claim against defendant for between $11,896.80 and $14,871, but
is limited to recovery of between $3,800 and $4,000 under the
terms of the settlement.  (Application for Additional
Compensation for Named Plaintiffs 3.)  West has devoted over one
hundred hours to assist counsel with this case, and Fagundes
estimates that she has spent eighty hours assisting counsel.
(Jones Decl. Ex I (West Decl. ¶ 2); Ex. H (Fagundes Decl. ¶ 2).)

Moreover, other courts have awarded comparable service
payments to named plaintiffs.  In re Domestic Air Transp., 148
F.R.D. 297, 357-58 (N.D. Ga. 1993) (awarding $142,500 total to
class representatives out of $50 million fund); In re Dun &
Bradstreet, 130 F.R.D. 366, 373-74 (S.D. Ohio 1990) (awarding
$215,000 to several class representatives out of an $18 million

fund).  Given the amount of time that named plaintiffs have
invested in this case, and the fact that Fagundes risked
retaliation from her employer, the court finds plaintiffs'
enhancement payments of $15,000 each to be reasonable.

III. <u>Conclusion</u>

          Based on the foregoing, the court approves the
settlement set forth in the Settlement Agreement and finds that
the settlement is fair, reasonable, adequate, and in the best
interest of the settlement classes.  In view of the diligent
efforts of counsel in a complex area of law and the favorable
outcome obtained for class members, the court finds an award of
twenty-five percent (25%) of the $5,000,000 common fund, to be an
appropriate amount for attorneys' fees.  The court also finds
that the costs requested by counsel are reasonable and fair.
Consummation of the settlement in accordance with the terms and
provisions of the Settlement Agreement is therefore approved, and
the definitions provided in the Settlement Agreement shall apply
to the terms used herein.  The Settlement Agreement shall be
binding upon all members of the class who did not timely elect to
be excluded from the classes.

          IT IS THEREFORE ORDERED that plaintiffs' motion for
final approval of settlement be, and the same hereby is, GRANTED.

          IT IS FURTHER ORDERED that:

          (1) for the purpose of this settlement, as described in
the court's order of June 12, 2006, good cause exists to certify
two settlement classes of plaintiffs: (a) All hourly employees
employed by Circle K Stores, Inc. in the state of California from
October 1, 2000 through the date the Court grants preliminary

approval of this Settlement; and (b) All employees employed by
Circle K Stores, Inc. in the state of California from March 3,
2000 through the date the Court grants preliminary approval of
this Settlement who did not have all their accrued but unused
vacation carried forward from year to year.  The court reaffirms
its order certifying the classes, including its findings that:

(a) the settlement classes are so numerous as to
make joinder of all class members impracticable.

(b) there are common questions of law and fact as
to each settlement class.

(c) named plaintiffs' claims are typical of the
claims of the members of the settlement classes.

(c) plaintiffs and class counsel will fairly and
adequately represent and protect the interests of settlement
classes, and have done so by entering into this Settlement
Agreement.

(d) questions of law and fact common to the
members of each settlement class predominate over any questions
affecting any individual member, and a class action is the
superior method for pursuing the claims at issue here.

(2) the notice given to the classes of the settlement
as described in the Settlement Agreement and the court's order of
June 12, 2006, constituted the best notice practicable under the
circumstances.  The Notice program provided due and adequate
notice of these proceedings and of the matters set forth in the
notice, including the settlement set forth in the Settlement
Agreement, to all persons and entities entitled to such notice,
and said notice fully satisfied the requirements of due process

1   and applicable law.  The court further finds that the mailing of

2   the notice of settlement to the putative class members was

3   properly administered by Rosenthal & Company, LLC, pursuant to

4   court order.

5          (3)  defendant shall pay the total sum of $5,000,000 to

6   a gross settlement fund to be distributed in a manner more fully

7   set forth below and as described in the court's June 12, 2006

8   order.  This sum shall not be decreased or increased in any

9   respect and shall represent the total consideration to be paid by

10  defendant in connection with the settlement.  Defendant shall

11  have no further liability for costs, expenses, interest, attorney

12  fees, or for any other charge, expense, or liability.

13         (4)  as detailed below, the following payments shall be

14  made from the settlement fund: payment of attorneys' fees and

15  costs, payment of an enhancement award to the class

16  representatives, and payment of costs and administrative fees to

17  the claims administrator, Rosenthal & Company.  Once all of the

18  above payments have been made, all amounts remaining in the

19  settlement fund shall be distributed to the class members who

20  timely filed valid claim forms as described in the Settlement

21  Agreement at ¶ 15 and by the court's June 12, 2006 preliminary

22  approval order.

23         (5)  plaintiffs' applications for attorneys' fees in

24  the amount of $1,225,000, litigation costs in the amount of

25  $15,142.39, and administrative costs in the amount of $145,536.25

26  be, and the same hereby are, GRANTED, provided that seventy-six

27  percent (76%) of the award for fees and costs shall be paid from

28  the gross settlement fund for the meal period class, and twenty-

23

1  four percent (24%) of the award shall be paid from the gross

2  settlement fund for the vacation class.

3          (6) named plaintiffs Vicki West and Wendy Fagundes be,

4  and the same hereby are, awarded additional compensation in the

5  amount of $15,000 each, with the condition that West's

6  compensation shall be paid from the gross settlement fund for the

7  vacation class, and Fagundes' compensation shall be paid from the

8  gross settlement fund for the meal period class.

9          (7) the claims administrator, Rosenthal & Company,

10  shall calculate the amount of each class members' settlement

11  check within fifteen (15) days of the entry of this order and

12  provide an accounting to both plaintiffs' and defendant's

13  counsel.  The distribution and mailing of settlement awards will

14  take place as provided in the Settlement Agreement at ¶ 15.

15  Specifically, the claims administrator shall cause the settlement

16  awards to be mailed to the class members who timely submitted

17  valid claim forms within twenty (20) calendar days following the

18  court's final approval of the settlement.  At the same time the

19  claims administrator causes the settlement awards to be mailed to

20  the class members, the claims administrator shall also cause the

21  attorneys' fees and costs awarded by this court to be mailed to

22  class counsel, the administrative costs awarded to the claims

23  administrator to be paid to Rosenthal & Company, and the

24  enhancement awards ordered by the court to be mailed to the class

25  representatives, Vicki West and Wendy Fagundes.

26          (8) proof of the payments outlined in the paragraphs

27  above will be filed with the court by the claims administrator

28  and provided to plaintiffs' and defendant's counsel.  Within ten

1  days after proof of payment has been filed with the court by the

2  claims administrator, the parties shall execute and file a

3  proposed final judgment and dismissal of this action.

4          (9) any settlement checks returned as undeliverable or

5  not cashed after ninety (90) days will be voided.  Undeliverable

6  or uncashed checks will be governed by ¶ 20 of the Settlement

7  Agreement.  Any residue remaining after all payments have been

8  made shall be governed by ¶ 15(h) of the Settlement Agreement.

9          (10) with respect to any class members who file

10 untimely claims, the court hereby finds that those claims shall

11 not be allowed and that the claims administrator may notify them

12 accordingly.

13         (11) as detailed in the release set forth in the

14 Settlement Agreement and accompanying the notice to the class,

15 entry of this Final Approval Order does hereby and is deemed to

16 dismiss this action on the merits and with prejudice and shall

17 constitute a full release and discharge by the respective classes

18 and each member of those classes on behalf of himself/herself,

19 and each of his/her descendants, dependants, heirs, executors,

20 administrators, assigns, successors, agents and attorneys, of

21 defendants or their present and former affiliated companies,

22 agents, servants, attorneys, subsidiaries, affiliates,

23 stockholders, heirs, executors, representatives, successors, or

24 assigns (the "Releasees"), as to any individual or class claim

25 that was asserted in this action, as well as any meal period

26 claims, rest period claims, claims pertaining to forfeited

27 vacation time, or other claims arising out of the events, acts,

28 facts, transactions, occurrences, representations, or omissions

25

alleged in the First Amended Complaint in this action ("Released Claims"), from the beginning of the respective class periods through the date the court enters this Final Approval Order.

(12) upon satisfaction of all payments and obligations hereunder, the court finds that each and every class member, including the class representatives, and all successors in interest shall be permanently enjoined and forever barred from prosecuting any and all Released Claims against the Releasees or any related entity or individual.  Thus, subject to and in accordance with the Settlement Agreement, even if plaintiffs and/or the class members, or any of them, may hereafter discover facts in addition to or different from those which they now know or believe to be true with respect to the subject matter of Released Claims, the plaintiffs and each class member shall be deemed to have, and by operation of the judgment in this case, shall have fully, finally, and forever settled and released any and all claims raised in this action, or any of the other Released Claims, whether known or unknown, suspected or unsuspected, contingent or non-contingent, whether or not concealed or hidden, which now exist, as set forth in the Settlement Agreement.

(13) neither the fact of settlement, nor the Settlement Agreement (or any other mediation or settlement-related documents or data), nor any of the negotiations or proceedings connected with the settlement, nor any act performed or document executed pursuant to or in furtherance of the settlement, shall be construed as an admission or evidence of the truth of the allegations in this action, or of any liability, fault, or

26

wrongdoing of any kind.

(14) the court enjoins all class members (unless and until the class member has submitted a timely and valid Request for Exclusion Form) from filing or prosecuting any claims, suits or administrative proceedings (including but not limited to claims with the California DLSE) regarding claims to be released by the settlement.

(15) this order for final approval of the settlement agreement is intended to effectuate the settlement reached by the parties and more fully described in the Settlement Agreement.

(16) the court retains jurisdiction over this matter and over all parties to this litigation, including all members of the classes.  The court will have continuing jurisdiction over this matter until all obligations outlined in the Settlement Agreement have been complied with and thereafter if any issues pertaining to this case and/or settlement arise.

(17) in the event the settlement does not become effective in accordance with the terms of the Settlement Agreement, this order shall be vacated.

DATED:  October 19, 2006

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE

27